IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ERNIE PEREZ, | Case No.: 2:22-cv-01047-AN |
| Plaintiff, | |
| v. | |
| | OPINION AND ORDER |
| JAMIE MILLER, ASHLEY CONWAY, and KIMBERLY SIGRAH, | |
| Defendants. | |

Plaintiff Ernie Perez brings this 42 U.S.C. § 1983 action against defendants Jamie Miller ("Miller"), Ashley Conway ("Conway"), and Kimberly Sigrah ("Sigrah"), alleging violations of his First Amendment rights. On December 4, 2023, plaintiff filed a Motion for Summary Judgment, ECF [74]. On December 22, 2023, defendants filed a cross-Motion for Summary Judgment, ECF [75]. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the following reasons, plaintiff's motion is DENIED, and defendants' motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). When cross-motions for summary judgment are filed, each party's evidence is considered, "regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Id.*  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *Id.* at 325.  Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  *Id.*; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial.  *Celotex*, 477 U.S. at 324.

## BACKGROUND

### A.    Factual Background

Plaintiff is an inmate at Snake River Correctional Institution ("SRCI").  Pl.'s Mot. For Summ. J. ("Pl.'s Mot."), ECF [74], at 4.  Miller is the superintendent at SRCI and is sued only in his official capacity.  *Id.* at 5; Defs.' Mot. For Summ. J. ("Defs.' Mot."), ECF [75], at 1.  Sigrah is the Law Library Coordinator at SRCI and is sued in her individual and official capacities. Pl.'s Mot. 5; Defs.' Mot. 1. Conway is a staff member for Inmate Legal Services ("ILS") at SRCI and is sued in her individual and official capacities.  Pl.'s Mot. 5; Defs.' Mot. 1.

From March 14, 2022 to September 9, 2022, plaintiff was housed in the Disciplinary Segregation Unit ("DSU") at SRCI.  Pl.'s Mot. 4; Defs.' Mot. 4.  On March 25, 2022, plaintiff spoke with an attorney through a call facilitated by ILS.  Pl.'s Mot. 8.  The attorney agreed to represent plaintiff in a clemency application and stated that Governor Brown's office would be accepting applications in June of 2022.  *Id.*

On April 5, 2022, plaintiff submitted the following AIC Communication Form ("kyte") to

AIC Legal Services:  "I was wondering if you could schedule me for a legal call to contact the Oregon State Bar. Their toll free number is 1-800-452-8260.  Thank you."  *Id.*, Ex. 1, at 1; Decl. of Kimberly Sigrah ("Sigrah Decl."), ECF [76], Ex. 3.  On April 7, 2022, Conway sent the following response: "AIC Legal Services does not facilitate these calls.  You will want to contact your attorney to facilitate this call.  If you have money on your account you should be able to call yourself if you wish to do so.  I am not familiar with how the accounts or phones work in special housing."  *Id.*

In April or May of 2022, plaintiff received another call from his attorney and was told that he should expect "regular telephone calls" from the attorney's office.  Pl.'s Mot. 8.  However, plaintiff did not receive further calls and he became concerned.  *Id.*  Plaintiff submitted written requests for telephone access on June 27, 2022, July 6, 2022, July 10, 2022, and July 13, 2022.  *Id.*, Ex 1.  The requests stated the following:

- June 27, 2022 kyte to ILS:

"I'm working with an attorney to do a clemency petition.  I need to call him because I haven't heard from him for over a month.  I just want to get a quick call.  I'm sure he wouldn't mind a quick talk with me.  Here's his info: . . . .  Please schedule me for a call with him if you can.  Again, he is my attorney.  We have a retainer agreement.  Thank you."  *Id.*, Ex. 1, at 6; Sigrah Decl., Ex. 4, at 4.

  o On July 7, 2022, Conway responded: "CI Law Library schedules all attorney calls.  Sending Attorney Visitation and Phone Call Instructions (#09.000)."  Pl.'s Mot., Ex. 1, at 6; Sigrah Decl., Ex. 4, at 4.

- July 6, 2022 kyte addressed to ILS:

"Back on June 26, 2022, I requested a legal phone call to call my attorney Walter Fonseca. I really need this call since my paperwork was due back in June and I have not heard from him or his office at all since mid-May.  Please schedule me for a phone call so I can get a hold of him, here's his info: . . . ."  Pl.'s Mot., Ex. 1, at 3; Sigrah Decl., Ex. 4, at 1.

  o On July 8, 2022, Conway and Sigrah responded: "AIC Legal Services does not schedule attorney calls.  Sending Attorney Visitation and Phone Call Instructions. (#09.000)."  Pl.'s Mot., Ex. 1, at 3; Sigrah Decl., Ex. 4, at 1.

- July 10, 2022 Special Housing Law Library Request Form:

"I am returning all checked out materials.  I've requested a legal call to my clemency attorney, Walter Fonseca, several times but have not been approved.  The attorney phone call instructions you sent me say I can be approved for a call while in DSU if I have a 30 day deadline.  The Governor set her deadline for clemency petitions in June this year.  Clearly that has passed.  Thirty days from today is August 9, 2022.  I think for sure my attorney should be done by then?  I need to call him.  Please register my expired deadline or alternatively my August 9, 2022 deadline so I can be approved for a legal call.  Thank you.  Here's his info . . . ."  Pl.'s Mot., Ex. 1, at 9; Sigrah Decl., Ex. 4, at 7.

  o  On July 13, 2022, Sigrah responded:

     "The law library does not schedule time for AIC's to use a phone to contact their attorneys.  Nor does the law library facilitate calls between an attorney and an AIC.  As per the information sheet, an attorney needs to submit a scheduling request via the internet.  The use of a phone when an AIC has a 30 day deadline is coordinated through the security staff in Special Housing.  We have asked for confirmation that this is still the process but we have not heard back from security staff.  Please send us the court document showing your deadline so that we can officially record it and be able to verify its existence when we are asked by security if needed.  Thank you."  Pl.'s Mot., Ex. 1, at 9; Sigrah Decl., Ex. 4, at 7.

• July 13, 2022 Special Housing Law Library Request Form:

"I am resubmitting the documents w/a certificate of service.  Thanks for alerting me about the standing order.  I didn't realize there was a 'court order' that applied.  Yeah so I don't have a court document.  Please explain to security staff that it's a clemency proceeding and it is overdue.  Walter Fonseca is my retained counsel and I would like to have a brief, confidential call with him.  Thank you.  Here's his info again: . . . .  Please let me know which 'security staff' member I should kyte for a confidential legal call."  Pl.'s Mot., Ex. 1, at 9; Sigrah Decl., Ex. 4, at 9.

  o  The form was answered on July 15, 2022, signed by Sigrah, and states, "(28) AIC original documents returned."  Pl.'s Mot., Ex. 1, at 10; Sigrah Decl., Ex. 4, at 9.

     Plaintiff's attorney sent him a letter dated July 19, 2022, requesting additional information for plaintiff's clemency application and stating that the attorney intended to complete plaintiff's clemency application by mid-August.  Pl.'s Mot. 9.  It is unclear when plaintiff received the letter.  However, after receiving the letter, plaintiff temporarily stopped sending requests for telephone access because it answered the primary question that he had.  *Id.*  Plaintiff sent a request to the SRCI DSU Correctional Captain to request a telephone call, but did not receive a response.[1]  *Id.*; Third Am. Compl., ECF [65], ¶ 10. Plaintiff

---

[1] Plaintiff does not provide evidence in support of this assertion.

also wrote a letter to his attorney requesting a telephone call, but did not receive a response.[2]  Pl.'s Mot. 9.

On August 29, 2022, plaintiff sent the following kyte to his correctional counselor:

"I'm still back here in DSU.  I've been trying to get ahold of my clemency attorney.  We were supposed to have my clemency paperwork in by June this year.  He has not called me since May and has not responded to my last letter.  Is there any way you can approve me to get a legal call? (I'm asking because I read the OAR Telephones (Inmate) and it said you might be able to get this approved, OAR 291-130-0021(3).  I've tried just about everything else.)  Thank you.  Here's my attorney's info . . . ."

Pl.'s Mot., Ex. 1, at 11; Sigrah Decl., Ex. 4, at 11.  The response is not dated, and the signature is illegible, but it states, "Ms. Sigrah in the law library does legal calls – please contact her."  Pl.'s Mot., Ex. 1, at 11; Sigrah Decl., Ex. 4, at 11.

On September 16, 2022, after plaintiff was released from the DSU, he was able to call his clemency attorney.  *Id.* at 9.

**B.    Applicable Policies**

ODOC's policies and procedures regarding AIC's use of telephone systems are governed by Chapter 291, Division 130 of the Oregon Administrative Rules ("OAR").  Under OAR 291-130-0016(10)(a), "Inmates in special housing may have restricted telephone services, and be allowed only emergency calls, legal calls as specified in OAR 291-130-0021, or other calls as authorized by the functional unit manager or designee."  Special housing includes the DSU.  OAR 291-130-0016(10).  Legal telephone calls include "calls between an inmate and his/her attorney."  OAR 291-130-0006(4).

When an inmate in the special housing, including the DSU, has "an active or pending case with an imminent court deadline of ten business days or less," the inmate may "be permitted a legal call to his/her attorney as approved by the officer-in-charge or the inmate's counselor."  OAR 291-130-0021(3).  If using the inmate telephone system, "[d]esignated staff will make arrangements for the inmate to make the call."  OAR 291-130-0021(3)(a).  If using a staff phone, "[d]esignated staff will facilitate the call and verify the identity of the person called.  The staff member shall leave the area where the call is taking place; however, the inmate shall be kept under observation."  OAR 291-130-0021(3)(b).  The term "designated

---

[2] Plaintiff does not provide evidence in support of this assertion.

staff" is not defined in the rules.

The "Attorney Visits and Phone Call Instructions #9.000" document referenced in response to plaintiff's July 6, 2022 kyte and his June 27, 2022 kyte is dated July 28, 2021, and states the following:

> "Snake River Correctional Institution operates under the following procedures for allowing an AIC access to attorney and legal calls:
> "► Write your attorney and request a professional visit or legal call
> "**VISITATION**
> "► Inform the attorney that he/she needs to contact Inmate Legal Services at (541) 881-4537 or by emailing DL_SRCI_Legal@doc.state.or.us
>> "♦ It's the AIC's/Attorney's responsibility to contact the Court and provide the above information and make appropriate arrangements for any scheduled court appearance.
> "**LEGAL CALLS**
> "► Inform the attorney that he/she needs to Google **Legal Call Request Form (wufoo.com)**. This will take them directly to the form necessary to request and schedule legal calls.
> "AIC's [*sic*] in **General Population/ASU** may call their attorney if they accept collect calls from their housing unit on the 1st and 3rd Thursday of each month.
> "AIC's [*sic*] in **Special Housing** may call their attorney if they accept collect calls though Inmate Legal Services on the 1st and 3rd Thursday of each month. You must provide in advance the attorney's name and phone number, case number, and a 30 day deadline date in a kyte to: ILS, at mail box 184.
> "After the above arrangements are made, the AIC will be placed on a call out for the scheduled date and time."

Pl.'s Mot., Ex. 1, at 5, 8; Sigrah Decl., Ex. 4, at 3, 6.

## DISCUSSION

Plaintiff brings his claim under 42 U.S.C. § 1983 for violation of his First Amendment right to freedom of expression by restricting his phone access while he was housed in the DSU. Incarceration does not strip individuals of all constitutional protections, but "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). Nonetheless, "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Turner v. Safley*, 482 U.S. 78, 84 (1987). A prisoner's right to free expression includes "the right to communicate with persons outside prison walls," and telephone access is one means of exercising that right. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002).

A.     **Plaintiff's Motion for Summary Judgment**

Plaintiff argues that defendants infringed on his First Amendment rights by refusing to facilitate a telephone call for him with his attorney, effectively restricting his telephone access for approximately 180 days.  To establish a § 1983 claim, a plaintiff must show that (1) the defendant acted under color of state law, and (2) the defendant deprived the plaintiff of a right under federal law or under the U.S. Constitution.  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000).  A prison regulation that impinges on an inmate's constitutional right is not unconstitutional if "it is reasonably related to legitimate penological interests."  *Id.* (quoting *Turner*, 482 U.S. at 89).

At the outset, the parties do not seem to agree on what regulation was being enforced that allegedly impinged plaintiff's constitutional right.  Defendants argue that they were enforcing the regulations provided in the OARs, which permit prisoners in the DSU to make legal calls if they have "an active or pending case with an imminent court deadline of ten business days," and if the call is approved "by the officer-in-charge or the inmate's counselor."  "Designated staff" are responsible for arranging the call, which defendants argue are the security staff at the DSU.  Thus, defendants contend that did not infringe on plaintiff's rights because they were not responsible for facilitating calls for inmates housed in the DSU; rather, DSU security staff were responsible for such calls.

However, plaintiff argues that defendants were enforcing the SRCI policy that was provided to plaintiff twice when he requested telephone access.  That policy offers two paths for an inmate to speak with their attorney.  The AIC may "[w]rite [their] attorney and request a professional visit or legal call," and the attorney must then fill out the "Legal Call Request Form" to request and schedule a call.  Alternatively, AICs in special housing can call their attorney "through Inmate Legal Services on the 1st and 3rd Thursday of each month" if the AIC provides "the attorney's name and phone number, case number, and a 30 day deadline date" to ILS.

Contrary to defendants' arguments, the written policy makes it seem as though ILS is the "designated staff" responsible for arranging legal phone calls for AICs in special housing.  The written policy does not appear to require approval from the "officer-in-charge" or the "inmate's counselor," nor does it identify who the "officer-in-charge" would even be.  It also makes no reference to security staff as

being responsible for facilitating these calls—it plainly states that AICs in special housing may call their attorney "through Inmate Legal Services," and requires AICs to submit the necessary information to ILS, not security staff.

Plaintiff was also provided with conflicting information throughout his time in DSU, further emphasizing the lack of clarity on the governing policy. Conway inexplicably told plaintiff that ILS did not facilitate calls for inmates in special housing yet, on two occasions, provided plaintiff with an SRCI policy that stated the opposite. Plaintiff was also told by two separate people that these calls were facilitated by the law library. Then, plaintiff was told that the calls were facilitated through security staff in DSU, although who, precisely, amongst the security staff was responsible for facilitating the calls was never made clear.[3] Defendants now maintain that these calls are facilitated through the DSU security staff, but they have yet to identify who within the security staff should be contacted by inmates in the DSU who wish to schedule a phone call with their attorney.

Viewing the facts in the light most favorable to defendants, there is a genuine dispute of material fact as to the governing regulation that was being enforced. Although the written policy appears to deem ILS the "designated staff" responsible for facilitating legal calls for AICs in special housing, Sigrah informed plaintiff that security staff held such responsibility. This dispute bears on the assessment of plaintiff's motion because the Court is unable to assess the reasonableness of the regulation allegedly impinging plaintiff's constitutional rights when the nature of the regulation itself is disputed. This alone is sufficient to make summary judgment in plaintiff's favor inappropriate.

**B.      Defendant's Motion for Summary Judgment**

Viewing the evidence in the light most favorable to plaintiff, however, this issue of fact does not arise. In this light, while there may have been confusion amongst SRCI staff about who was responsible for arranging legal calls for AICs in the DSU, SRCI's policy itself was clear—ILS was

---

[3] Indeed, plaintiff states that he attempted to contact the DSU Correctional Captain to schedule a phone call, but he did not receive a response. Similarly, Sigrah indicated in one of plaintiff's kytes that she attempted to contact security staff but did not receive a response.

responsible.  Thus, the first question is which defendants, if any, infringed plaintiff's constitutional rights by enforcing the regulation.

      1.    *Infringement of Plaintiff's Rights*

      a.    Miller's Conduct

 Miller is sued in his official capacity only, and a suit against a state official "in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, "it is no different from a suit against the State itself." *Id.*  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983," so a § 1983 claim cannot be maintained against a State or state official acting in their official capacity.  *Id.*; *see Lapides v. Board of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 617 (2002) (declining to address Eleventh Amendment immunity waiver issue as applied to § 1983 claim because "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted").  Therefore, plaintiff's claim against Miller in his official capacity fails.

      b.    Sigrah's Conduct

      Viewing the evidence in the light most favorable to plaintiff, defendants have shown an absence of evidence supporting plaintiff's claim against Sigrah.  Because this case involves a failure to act, rather than affirmative actions, to create a triable issue of fact as to whether Sigrah deprived plaintiff of a constitutional right, plaintiff must show that Sigrah "omit[ted] to perform an act which [s]he [was] legally required to do that cause[d] the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988).  Here, defendants have demonstrated an absence of evidence supporting plaintiff's claim that Sigrah was responsible for facilitating legal calls for AICs in the DSU, and, consequently, that Sigrah infringed on plaintiff's rights by not arranging such a call.  Although plaintiff was told by two individuals that the law library facilitated these calls, no other evidence on the record suggests

that the law library held such responsibilities. This is insufficient to create a genuine dispute of material fact, and summary judgment in Sigrah's favor is appropriate.

   b. Conway's Conduct

    However, viewing the evidence in the light most favorable to plaintiff, defendants have not demonstrated an absence of evidence supporting plaintiff's claim against Conway. Plaintiff has established a triable issue of material fact regarding whether Conway, as an ILS staff member, was responsible for facilitating plaintiff's legal call pursuant to SRCI's policy, and, consequently, infringed on plaintiff's constitutional rights by failing to perform that responsibility. The question remains whether such an infringement, if proved, would nonetheless be permissible because it was reasonably related to a legitimate penological interest.

   2. Turner *Factors*

    Under *Turner*, the reasonableness of a restriction is assessed based on four factors:

> "(1) whether there is a valid, rational connection between the restriction and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether accommodating the asserted constitutional right will have a significant negative impact on prison guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are obvious, easy alternatives to the restriction showing that it is an exaggerated response to prison concerns."

*Valdez*, 302 F.3d at 1048 (quoting *Turner*, 482 U.S. at 89-90).

   a. Legitimate Governmental Interest

    The difficulty with this inquiry is created by the unique facts of this case. In most cases, the interest advanced by restricting a prisoner's telephone access is easily determined because the cases involved an intentional revocation of a prisoner's phone privileges. That is, there was a tangible reason why a prisoner's phone access was restricted. *See, e.g.*, *id.* at 1042-43 (restricting prisoner's phone access to one daily call with his attorney to prevent defendant from notifying codefendants of superseding indictment); *see also Maylender v. Prison Health Servs., Inc.*, 64 Fed. App'x 609, 610 (9th Cir. 2003) (unpublished) (restricting prisoner's phone access due to defendant's history of attempted escapes); *Beltran v. United States*, No. 3:15-CV-00785-SI, 2015 WL 7722414, at *2 (D. Or. Nov. 30, 2015) (restricting

prisoner's phone access because defendant was in possession of unauthorized items). Conversely, in this case, plaintiff's telephone access was restricted as a result of poor procedure, rather than as a consequence for some action. Thus, it becomes difficult to ascertain what interest was advanced by restricting plaintiff's phone access.

First, defendants argue that they had a legitimate security interest because special housing is a highly regulated and secure environment. Thus, requiring security staff to facilitate calls for AICs in special housing advances SRCI's security interests. While this interest may, in a general sense, be legitimate, the Court is unconvinced that the restriction was rationally related to this interest. That is, viewing the evidence in the light most favorable to plaintiff, the restriction on plaintiff's phone access was related to unclear or misunderstood application of policies, not security interests. Indeed, it is difficult to understand how Conway's refusal to facilitate a legal call for plaintiff was rationally related to security interests when SRCI's own policy imposed such responsibility on Conway, not DSU security staff. Viewing the evidence in the light most favorable to plaintiff, defendants have not demonstrated a legitimate governmental interest that is rationally connected to the restriction of plaintiff's phone access.

  b.  Alternative Means to Exercise the Right

Second, defendants argue that plaintiff had alternative means to exercise his right, such as writing his attorney a letter or contacting DSU security staff. The Court agrees that plaintiff could have written letters to his attorney, either about the clemency application in general, or to ask his attorney to set up an in-person visit or phone call. Although plaintiff argues that this option was insufficient because his attorney was more responsive to phone calls, this does not negate the fact that the option remained available. Indeed, plaintiff states that he did write such a letter to his attorney while in the DSU, but he did not receive a response.

However, the Court is unconvinced of the viability of plaintiff contacting DSU security staff to facilitate a call. Plaintiff was never informed of who to contact, aside from the broad direction of "security staff," and it does not appear that Sigrah ever received a response when she attempted to contact

DSU security staff.  Given the lack of responsiveness and unclear guidance, this was not an alternative means for plaintiff to exercise his rights.

c.    Adverse Impact

Third, defendants argue that requiring ILS or law library staff to "provide concierge phone service to AICs in DSU" would adversely impact other AICs by reducing Conway and Sigrah's availability to provide services to other AICs, and it would adversely impact prison security.  Again, it is unclear how requiring ILS to facilitate calls for AICs in special housing adversely impacts other AICs or raises security concerns when SRCI's written policy plainly prescribes such a procedure.  Accommodating plaintiff and facilitating the phone call would have directly complied with SRCI's existing written policy.  In essence, viewing the evidence in the light most favorable to plaintiff, to accommodate plaintiff's right, all Conway needed to do was the precise function that the policy, which Conway provided to plaintiff, stated she should conduct.  If adverse impacts would result, this is an issue derived from the policy not an issue resulting from accommodating plaintiff's rights.

d.    Alternative to the Restriction

Fourth, defendants argue that there are no ready alternatives to the current division of labor wherein DSU staff are responsible for accommodating outgoing calls for AICs housed in the DSU.  Putting aside the fact that there is a genuine dispute as to whether DSU staff do, in fact, have such responsibilities, obvious, easy alternatives are plainly available.  For example, even assuming that DSU staff are responsible for facilitating outgoing calls for AICs in special housing, those AICs could be provided with a telephone policy that clearly identifies who on the security staff should be contacted to approve outgoing calls.  Such an alternative would comply more closely with OAR 291-130-0021(3), which requires an officer-in-charge to approve calls for AICs in special housing.  Further, the telephone policy could identify the designated staff responsible for arranging and facilitating the call, if the designated staff is not, as the current policy suggests, ILS.  In essence, clarifying the policy is an obvious, easy alternative to merely restricting an AIC's phone access because the policy is unclear or erroneous.

On balance, after weighing the *Turner* factors, plaintiff has demonstrated a triable issue of fact as to whether the restriction of his phone use was rationally related to a legitimate government interest.

3.    *Prison Litigation Reform Act ("PLRA")*

Defendants argue that plaintiff's requested injunctive relief does not comply with the PLRA because it inappropriately seeks prospective relief. 18 U.S.C. § 6326(a)(1)(A) prohibits courts from granting, or approving, prospective relief, "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." The Court agrees that plaintiff's proposed injunctive relief is not narrowly drawn and would not correct the alleged violation because plaintiff is no longer housed in the DSU, and his clemency application has been submitted. Accordingly, summary judgment in defendant's favor on plaintiff's claim for injunctive relief is appropriate.

4.    *Qualified Immunity*

Finally, defendants argue that Conway and Sigrah are entitled to qualified immunity.[4] Qualified immunity shields an official sued in their personal capacity from damages in a civil suit so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). If applicable, qualified immunity provides immunity against liability, as well as immunity from suit and other litigation burdens. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, qualified immunity is designed to dismiss "insubstantial claims" against government officials before the discovery phase. *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). Qualified immunity questions should, therefore, be resolved at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The qualified immunity analysis can be distilled into two elements: (1) whether the alleged conduct would violate a constitutional or statutory right; (2) whether the law clearly established, at the time of the conduct at issue, that the alleged conduct violated a constitutional or statutory right. *Gordon v. Cnty.*

---

[4] Because the Court has already determined that summary judgment in Sigrah's favor is appropriate, it considers this argument only as applied to Conway.

*of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021).  Having already determined that there is, at the least, a triable issue of fact whether Conway's alleged conduct violated plaintiff's right, the only remaining question is whether the law, at the time of Conway's conduct, clearly established that the conduct would violate a constitutional or statutory right.

The plaintiff bears the burden of establishing that the right allegedly violated was clearly established at the time of the alleged misconduct.  *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).  A clearly established right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix*, 577 U.S. at 11 (internal quotation marks omitted). Thus, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 12 (internal quotation marks omitted).  However, the question of "whether the violative nature of particular conduct is clearly established," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks omitted).

Plaintiff offers *Perez v. Peters*, No. 2:16-CV-2196-PK, 2017 WL 7734093, at *6 (D. Or. Aug. 7, 2017), and *Turner* for the proposition that the law is clearly established that incarcerated individuals have a First Amendment right to access telephones.  These cases present a broad legal principle, but the relevant question is best framed as whether a reasonable official in Conway's position would have known that, by refusing to arrange a legal call for plaintiff, they may unconstitutionally deprive plaintiff of his phone access.

On one hand, plaintiff has provided no cases with similar facts to the present situation that would indicate that an official in Conway's position would be on notice that their conduct in refusing to facilitate a legal call for plaintiff would violate plaintiff's rights.  On the other hand, the facts of this case are relatively unique because plaintiff's phone access was not necessarily restricted as a disciplinary measure or otherwise tied to an intentional decision.  Even in novel factual circumstances, however, a government actor may be on notice that their conduct violates established law in obvious or egregious cases. *See Taylor v. Riojas*, 592 U.S. 7 (2020); *Hope v. Pelzer*, 536 U.S. 730 (2002).

Defendants argue that Conway would not have known that her conduct would deprive plaintiff of his constitutional rights because she was not responsible for arranging calls for AICs in special housing. While this is contradicted by the telephone policy that Conway provided to plaintiff, both Conway and the correctional counselor that plaintiff wrote to believed that the law library was responsible for facilitating such calls, and Sigrah believed that the DSU security staff was responsible. Of the numerous officials involved in this incident, it seems that none believed that ILS was responsible for facilitating legal calls for AICs in special housing.

"The qualified immunity standard gives ample room for mistaken judgments." *Hunter*, 502 U.S at 229. Given the novel circumstances of this case and the apparent confusion amongst numerous SRCI employees as to who was responsible for facilitating legal calls for AICs in special housing, the Court cannot say that the law was clearly established such that a reasonable official in Conway's position would have known that failing to arrange a legal call for plaintiff would deprive plaintiff of his constitutional right. Thus, Conway is entitled to qualified immunity.

## CONCLUSION

Accordingly, plaintiff's Motion for Summary Judgment, ECF [74], is DENIED. Defendants' Motion for Summary Judgment, ECF [75], is GRANTED.

IT IS SO ORDERED.

DATED this 19th day of July, 2024.

Adrienne Nelson
United States District Judge